J-A27015-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INT. OF: D.R., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: D.R., A MINOR | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 225 MDA 2023 |

Appeal from the Dispositional Order Entered November 28, 2022
In the Court of Common Pleas of York County Juvenile Division at No(s):
CP-67-JV-0000571-2021


BEFORE:   LAZARUS, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED: MARCH 1, 2024**

D.R., a minor, appeals from the dispositional order, entered on November 28, 2022, after the juvenile court adjudicated him delinquent for committing one count each of criminal attempt–rape,[1] involuntary deviate sexual intercourse,[2] criminal attempt–sexual assault,[3] and indecent assault.[4] D.R. challenges the weight of the evidence.  After careful review, we affirm.

On June 10, 2021, K.M. (born 2010), the victim, was playing basketball with D.R. near D.R.'s home.  After some time, K.M. went into D.R.'s home to

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 901(a).

[2] *Id.* at § 3123(a)(1).

[3] *Id.* at § 901(a).

[4] *Id.* at § 3126(a)(7).

play video games. A.L., D.R.'s friend, was also in the home playing video games. When D.R. and K.M. were alone in a room, D.R. removed K.M.'s clothes, pried open her mouth, and put her head on his penis. K.M. tried to lift her head and leave, and was eventually able to turn her head away, at which time D.R. pushed K.M. down on her stomach and attempted to put his penis in her buttocks. At some point during the assault, A.L. entered the room and yelled at D.R. to stop. K.M. was able to get away and ran home. Upon arriving home, K.M. called her cousin and informed her about the incident with D.R.

The juvenile court held a factfinding/denial hearing on July 25, 2022, during which K.M., A.L., Clara Roberti, forensic interviewer with the York County Children's Advocacy Center (CAC), and Detective Stephen Lebo from the Northern York County Regional Police Department testified. At the conclusion of the hearing, the court determined, beyond a reasonable doubt, that D.R. committed the above offenses. On November 28, 2022, the juvenile court adjudicated D.R. delinquent and entered a dispositional order, placing him in supervised placement.

D.R. filed a timely post-dispositional motion, averring that the juvenile court's findings were against the weight of the evidence and that the court erred adjudicating D.R. delinquent, which the juvenile court denied after a

hearing on January 11, 2023.[5]  Subsequently, D.R. filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.[6]  D.R. raises the following issue for our review:

> Did the lower court abuse its discretion in rejecting D.R.'s challenge that the weight of the evidence was against his adjudications where the complaining witness' testimony was substantially contradicted by another witness, her own prior statements were inconsistent in key respects, and the court's resolution of these contradictions was largely based on the incorrect notion that they all concerned events preceding the alleged assault?

---

[5] A notice of appeal must be filed within 30 days of the entry of the order being appealed.  **See** Pa.R.A.P. 903(a).  In a juvenile court case, if the juvenile timely files a post-dispositional motion, the notice of appeal shall be filed within 30 days of the entry of the order deciding the motion.  **See** Pa.R.J.C.P. 620(B).  A trial court has 30 days to decide a post-dispositional motion, and if the court fails to decide the motion within that period, the motion is deemed denied by operation of law.  **See** Pa.R.J.C.P. 620(D).  When the motion is deemed denied by operation of law, the clerk of courts shall enter an order deeming the motion denied on behalf of the trial court and serve copies on the parties.  **See** Pa.R.J.C.P. 620(D)(3).  A notice of appeal must be filed within 30 days of the entry of the order denying the motion by operation of law.  **See** Pa.R.J.C.P. 620(B)(2)(b).

Here, D.R. filed his post-dispositional motion on December 7, 2022. Accordingly, the juvenile court had until January 6, 2023, to decide the motion, otherwise it would be deemed denied by operation of law.  The court did not enter an order deciding the motion by January 6; however, the clerk of courts also failed to enter an order deeming the motion denied on that date, as required.  Instead, the court held a hearing on the post-dispositional motion on January 11, 2023, and entered an order the same day, denying the motion. D.R. appealed within 30 days of that order.  We have held that a court breakdown occurs when the trial court clerk fails to enter an order deeming a post-sentence motion denied by operation of law pursuant to Pa.R.Crim.P. 720(B)(3)(c).  **See Commonwealth v. Patterson**, 940 A.2d 493, 498-99 (Pa. Super. 2007).  As a result, we deem D.R.'s appeal as timely filed.

[6] The juvenile court granted D.R. an extension to file his Rule 1925(b) statement, after which D.R. filed his statement by the extended deadline.

- 3 -

Appellant's Brief, at 5. Specifically, D.R. contends that the contradictions between the testimony of K.M. and A.L., as well as the inconsistencies between K.M.'s testimony at the factfinding/denial hearing and her prior statements when interviewed at the CAC, were such that the court improperly weighed K.M.'s testimony when rendering its adjudication, and D.R.'s adjudication and disposition should be vacated for a new factfinding/denial hearing. *Id.* at 16.

Our standard of review regarding weight of the evidence claims is well-settled:

> The weight of the evidence is exclusively for the finder of fact[,] who is free to believe all, part, or none of the evidence and to determine the credibility of witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Small*, 741 A.2d 666, 672 (Pa. 1999) (citations omitted). *See also Commonwealth v. Knox*, 50 A.3d 732, 738 (Pa. Super. 2012) ("A claim that the evidence presented at trial was contradictory . . . requires the grant of a new trial only when the verdict is so contrary to the evidence as to shock one's sense of justice.") (citation omitted).

> This Court applies the same standard for reviewing weight of the evidence claims in juvenile cases as [in] those involving adults. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. An appellate court, therefore, reviews the exercise of discretion, not the underlying question [of] whether the verdict is against the weight of the evidence.

- 4 -

*In re J.G.*, 145 A.3d 1179, 1187 (Pa. Super. 2016) (internal quotation marks and citations omitted). *See also Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003) ("[A]ppellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.").

D.R. included his weight of the evidence claim in his post-dispositional motion. The juvenile court denied that motion after a hearing on January 11, 2023, and addressed D.R.'s claim as follows:

> The [c]ourt acknowledged at the [fact-finding hearing] that there were discrepancies between the victim['s] and the minor witness's account of the events, however, the [c]ourt was able to reconcile those differences. Moreover, the differences related to what transpired before the act actually occurred. As a result, the [c]ourt determined that the victim was credible. Accordingly, the [c]ourt found [D.R.] to have committed the acts as alleged.

Order, 1/11/23, at 2-3. *See also*, N.T. Post-Dispositional Hearing, 1/11/23, at 7. We, therefore, must determine whether the juvenile court abused its discretion in rejecting D.R.'s claim.

A review of the record reveals that there were inconsistencies between K.M.'s testimony at the hearing and her prior statements during her interview with Clara Roberti at the CAC, which were admitted as tender years testimony.[7] In particular, K.M. testified at the factfinding/denial hearing that D.R. attempted to put his penis in her buttocks and that she "kind of" felt it, *see* N.T. Fact Finding/Denial Hearing, 7/25/22, at 13, 23, but stated during her CAC interview that D.R.'s penis did not touch any part of her body aside

---

[7] *See* 42 Pa.C.S.A. § 5985.1.

from her mouth. *See* K.M. Forensic Interview, 8/23/21, at 20:00, 25:00-26:00 (K.M. stating D.R. "made to put" his penis in her buttocks, but his penis did not touch her body); N.T. Fact Finding/Denial Hearing, 7/25/22, at 23-25 (K.M. acknowledging on cross-examination she did not remember prior statement that she did not feel D.R.'s penis on her body).

There were also differences between K.M.'s testimony and A.L.'s testimony. For example, K.M. testified that D.R. assaulted her in the living room, whereas A.L. testified that the two were in D.R.'s bedroom. *See* N.T. Fact Finding/Denial Hearing, 7/25/22, at 10-11, 19-20, 30-31, 34-36. Also, K.M. testified that K.M., D.R., and A.L. had been playing video games together and that the assault began when A.L. left to use the bathroom. *Id.* at 10, 18, 20-22. This was different from A.L.'s testimony, in which A.L. stated that he had been playing video games in D.R.'s home alone after "chatting" with D.R. and K.M. in the living room and D.R.'s bedroom. *Id.* at 34-35. However, A.L. also testified that he heard K.M. say "no" and "stop, stop, stop" before going to D.R.'s room to intervene. *Id.* at 29-30. A.L. testified that, upon entering D.R.'s room, he "saw movement under the blanket" and "grabbed [D.R.'s] legs and pulled and . . . [saw] clothes on the floor," and did not know what to do, so he left the room. *Id.* at 38.

While there were some inconsistencies and differences in K.M.'s testimony at the factfinding/denial hearing, compared to her CAC interview and A.L.'s testimony, any conflicts or contradictions in K.M.'s testimony were for the juvenile court to resolve. *See In the Interest of C.S.*, 63 A.3d 351,

357 (Pa. Super. 2013) ("Conflicts in the evidence and contradictions in the testimony of any witnesses are for the fact finder to resolve."); *see also Small*, *supra*. As highlighted above, the juvenile court recognized the discrepancies in K.M.'s testimony but was able to reconcile those discrepancies and found K.M. to be credible. *See* Order, 1/11/23, at 2-3.

After review of the record and the juvenile court's adjudication, we cannot say that the juvenile court's determination is so contrary to the evidence as to shock one's sense of justice. *See Small*, *supra*; *Knox*, *supra*. Moreover, this Court will not reweigh the evidence or substitute our own judgment for that of the factfinder. *See In re J.G.*, *supra*; *see also In re T.G.*, 836 A.2d 1003, 1005 (Pa. Super. 2003). Therefore, we conclude that the juvenile court did not abuse its discretion when it concluded that the verdict was not against the weight of the evidence. *See In re J.G.*, *supra*. As such, we affirm the juvenile court's dispositional order.

Order affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 03/01/2024